**STATE of Minnesota, Respondent,**

v.

**William Allen FRAZIER, Appellant.**

No. C8–00–2230.

Court of Appeals of Minnesota.

July 24, 2001.

Review Granted Sept. 25, 2001.

Mike Hatch, Attorney General, Natalie E. Hudson, Assistant Attorney General, St. Paul, MN; and Alan Mitchell, St. Louis County Attorney, Duluth, MN, (for respondent).

John M. Stuart, State Public Defender, Michael F. Cromett, Assistant State Public Defender, Minneapolis, MN, (for appellant).

Considered and decided by PETERSON, Presiding Judge, KALITOWSKI and FOLEY, Judges.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

KALITOWSKI, Judge

Appellant contends that Minn.Stat. § 609.229 (1998), the statute that makes it a crime to commit certain enumerated offenses "for the benefit of a gang," violates the equal protection guarantees of the Minnesota Constitution.

## FACTS

Appellant William Allen Frazier sold crack cocaine to confidential reliable informants on November 2 and 9, 1999, and January 29, 2000. In an amended complaint, appellant was charged with one count of first-degree controlled substance crime, two counts of second-degree controlled substance crime, and one count of third-degree controlled substance crime. The state also alleged that all of the offenses were committed for the benefit of a gang, in violation of Minn.Stat. § 609.229 (1998). On August 7, 2000, appellant, who admitted membership in the New Breed Disciples, a criminal gang, pleaded guilty to second-degree controlled substance crime and crime committed for the benefit of a gang. At the plea hearing, the state, appellant, and the district court were aware that appellant intended to contest the constitutionality of section 609.229 at the sentencing hearing.

At his sentencing hearing on September 14, 2000, appellant, a black male, challenged the constitutionality of section 609.229. He presented Minnesota Gang Strike Force statistics indicating that of the 1,025 confirmed gang members in Minnesota, at least 70% are racial minorities. In addition he provided statistics from the Minnesota Sentencing Guidelines Commission indicating that of the 39 persons convicted of crime committed for benefit of a gang, at least 35 were racial minorities.

The district court rejected appellant's argument and sentenced appellant to the presumptive 48 month executed term on the second-degree controlled substance conviction and an additional consecutive 12 month executed term on the crime committed for the benefit of a gang conviction. On this appeal appellant challenges the constitutionality of his conviction of crime committed for the benefit of a gang.

## ISSUES

1. Did appellant waive his right to challenge the constitutionality of Minn.Stat. § 609.229 (1998) on appeal?

2. Does Minn.Stat. § 609.229 violate the equal protection guarantees of the Minn. Const. art. I, § 2?

## ANALYSIS

### I.

■ The state, relying on *State v. Lothenbach*, 296 N.W.2d 854 (Minn.1980), contends that appellant forfeited his right to contest the constitutionality of Minn.Stat. § 609.229 (1998), because the issue was not argued until after appellant pleaded guilty. We disagree. The record indicates that appellant, the district court, and the state all understood at the plea hearing that appellant intended to challenge the statute at the sentencing hearing. Thus, we conclude that, as in *Lothenbach*, appellant here adequately reserved his right to challenge the constitutionality of section 609 .229 prior to pleading guilty. *See id.* at 858 (reviewing a defendant's Fourth Amendment issue although he failed to follow the preferred approach of submitting the case to the district court on stipulated facts to preserve a pretrial claim for appellate review).

## II.

■ Appellant contends that Minn. Stat. § 609.229 has a discriminatory impact because it results in longer prison sentences for minorities and violates the equal protection guarantee of the Minnesota Constitution. "In evaluating challenges to the constitutionality of statutes, * * * the interpretation of statutes is a question of law." *In re Blilie,* 494 N.W.2d 877, 881 (Minn.1993) (citation omitted). Accordingly, this court "is not bound by the [district] court's conclusions." *Id.* (quotation omitted). "Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty,* 448 N.W.2d 363, 364 (Minn.1989) (citation omitted); *see also State v. Machholz,* 574 N.W.2d 415, 419 (Minn.1998). Appellant bears the burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional. *Machholz,* 574 N.W.2d at 419.

■ Federal courts review an equal protection challenge using a rational basis test requiring

(1) a legitimate purpose for the challenged legislation, and (2) that it was reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose.

*State v. Russell,* 477 N.W.2d 886, 887 (Minn.1991) (citation omitted). But in Minnesota, our courts have applied a more stringent rational basis test than the federal equivalent.

(1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; and (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Id.* at 888 (quotation omitted). Minnesota courts require "a reasonable connection between the actual * * * effect of the challenged classification and the statutory goals." *Id.* at 889 (citation omitted).

■ In 1991, Minnesota enacted a criminal statute, making it unlawful to commit a crime for the benefit of a gang. 1991 Minn. Laws ch. 279, § 30. The statute defines a criminal gang as any ongoing group with three or more persons that

(1) has, as one of its primary activities, the commission of one or more of the offenses listed in section 609.11, subdivision 9;

(2) has a common name or common identifying sign or symbol; and

(3) includes members who individually or collectively engage in or have engaged in a pattern of criminal activity.

Minn.Stat. § 609.229, subd. 1 (1998). The presumptive sentence for a crime committed for the benefit of a gang is a 12 month executed sentence. *Id.,* subd. 4 (1998).

■ Under the first prong of the *Russell* test, we evaluate section 609.229 to see if it provides a "genuine and substantial distinction between those inside and outside the class." 477 N.W.2d at 889. To meet this standard, the state is required to show more than anecdotal support for classifying gang members differently than nongang members. *See id.* (finding county attorney's testimony, about what amounts of controlled substances are commonly sold on the streets, anecdotal).

Appellant contends that as in *Russell* the state has relied upon only anecdotal evidence to support treating criminal gangs differently than groups that do not fit the definition of a gang under Minn. Stat. § 609.229, subd. 1. We disagree.

Minn.Stat. § 609.229 was enacted, in part, because crimes committed for the benefit of a gang "are more serious" and deserve a greater penalty because of the impact on the victim and the community. *Hearing on S.F. No. 809 Before the Senate Criminal Law Subcommittee* (April 4, 1991) (statement of Norman Coleman, Assistant Attorney General). The legislature was presented with a number of newspaper articles reflecting the seriousness of the gang problem including an article detailing the dismissal of felony charges in three cases in Hennepin County because witnesses were threatened by gang members.

Moreover, to justify the creation of this new crime, two witnesses presented testimony about the growing problem with criminal gangs in Minnesota. A psychologist with the Minneapolis Public Schools testified that an increasing number of the students are afraid to leave their homes at night because of street gangs, and that he has noticed young children flashing gang signs, the prevalence of gang insignias on students' folders, and a recent death threat by a gang member against an assistant principal. *Id.* (statement by Dr. Donald Kodluboy). Further, he hypothesized that if nothing was done to respond to the influx of street gangs, the gangs would become a "permanent part of our community as they are in virtually every other major urban area." *Id.* Additionally, the Minnesota President of the NAACP, a member of Operation Take Back, and a Central Minneapolis resident, testified that residents in his neighborhood are living in fear because of gang intimidation. *Id.*

(statement by Lewis Freeman). We conclude that the legislature based its decision to treat street gang members differently from nongang members on more than anecdotal evidence.

Appellant also contends there is no showing that prosecution under statutes defining "traditional criminal offenses" was ineffective in dealing with criminal offenses committed by gang members. But statutes are presumed constitutional, *Machholz*, 574 N.W.2d at 419, and the legislature concluded that the gang statute was necessary to combat violent street gangs. Thus, the legislature found that statutes defining traditional criminal offenses were not sufficient to deal with crimes committed by gang members. We defer to that finding.

Additionally, appellant contends that the gang statute does not have a rational basis because it does not cover similarly situated organizations that do not have a "common name or common identifying sign or symbol." But appellant bears the burden of demonstrating beyond a reasonable doubt that a statute is unconstitutional. *Id.* And appellant fails to identify a similarly situated criminal organization that may escape the gang statute's purview because it does not have a common name or identifying symbol. Thus, appellant fails to prove beyond a reasonable doubt that the gang statute violates equal protection guarantees.

Appellant also suggests that the gang statute has no rational basis and violates equal protection guarantees because it focuses on "ongoing" gangs as opposed to "disbanded" gangs. We disagree. Disband means to "break up." *The American Heritage Dictionary* 401 (2d ed.1985). By its very definition, a disbanded street gang is no longer a threat to the community and thus it is rational for the legislature to focus its efforts on "ongoing" street gangs.

Therefore, because the legislature was attempting to combat gang violence, we conclude that section 609.229 shows a "substantial and distinct" reason for creating a harsher penalty for crimes committed by gang members.

Although appellant did not contest section 609.229 under the second and third prongs of *Russell*, we note that an analysis of both prongs also results in a finding of constitutionality. Under the second prong of the *Russell* analysis, "there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy" proposed by the contested statute. 477 N.W.2d at 888 (quotation omitted). Here, the legislature determined that criminal gangs present a particular threat to the community and thus a harsher penalty is required. By increasing the penalties for gang crimes, the legislature is attempting to address the threat of gang violence and intimidation. Finally, under the third prong of the *Russell* analysis we conclude that the purpose of the statute is "one that the state can legitimately attempt to achieve." *Id.* (quotation omitted).

## DECISION

Appellant did not waive his right to contest the constitutionality of Minn.Stat. § 609.229 (1998) on appeal because the district court, appellant, and the state agreed that appellant could contest the statute at the sentencing hearing. Section 609.229 does not violate the equal protection clause of Minn. Const. art. I, § 2.

**Affirmed.**