STATE of Minnesota, Respondent,

v.

**Mantu Manier CRAVEN, Appellant.**

**No. C5–00–1150.**

Court of Appeals of Minnesota.

May 22, 2001.

Review Denied Aug. 15, 2001.

Mike Hatch, Attorney General, St. Paul; and Amy Klobuchar, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, for respondent.

John M. Stuart, State Public Defender, Sara L. Martin, Assistant Public Defender; and Joseph Margulies, Margulies & Richmond, Minneapolis, for appellant.

Considered and decided by AMUNDSON, P.J., KLAPHAKE and WILLIS, JJ.

## OPINION

AMUNDSON, Judge.

On appeal from second-degree felony-murder convictions, appellant argues that the trial court violated due process when it declined to dismiss the felony-murder charges in a case in which death accidentally resulted from appellant's fleeing from a police officer in a motor vehicle. Appellant argues that a more specific statute prohibited flight from police causing death, the felony-murder statute did not give fair warning that appellant's conduct would be charged as felony-murder, and the felony-murder statute was used discriminatorily based on race. Alternatively, appellant argues that the trial court should have considered fleeing causing death as a lesser-included offense.

## FACTS

On August 23, 1998, Mantu Manier Craven, a 19–year–old black male, attended a barbecue in north Minneapolis with his half-brother Caine Williams. At the barbecue, Williams was using marijuana and Craven was drinking. Shortly before midnight, they left the party in a rented minivan and drove to a gas station; Craven

was severely intoxicated.[1] At the gas station, Craven got into an argument with some other customers, and, frightened, Craven and Williams hurriedly left the gas station, squealing the van's tires as they left. The squealing tires attracted the attention of Minneapolis Police Officer Christopher Gaiters. Gaiters turned on his police car lights and observed the minivan running a red light and forcing another vehicle off the road as it entered the I–94 entrance ramp. Gaiters then activated his siren and began to pursue the minivan. Gaiters assessed the minivan's speed at approximately 55 miles per hour—the speed limit in good driving conditions.

As I–94 enters the Lowry Hill tunnel, it curves and the recommended speed falls to 35 miles per hour. As the minivan entered this tunnel, Craven braked, but lost control of his vehicle and crashed into the tunnel wall. The initial crash was forceful enough to shatter the passenger door window and throw Williams into the door and then into the driver's seat. The front right wheel crumpled under the vehicle, rendering the van inoperable and causing it to pull to the right. Less than a second after hitting the wall, the minivan exited the tunnel, lurched to the right, and plowed into two vehicles parked on the shoulder immediately outside of the tunnel, killing two women who had stopped there to change a flat tire.

Craven was charged with two counts of third-degree murder under Minn.Stat. § 609.195(a) (1998) and two counts of fleeing a peace officer in a motor vehicle causing death (fleeing causing death) under Minn.Stat. § 609.487, subd. 4 (1998). More than a year later, the state amended its complaint, dismissing the two counts of fleeing causing death and adding two

counts of second-degree (felony) murder under Minn.Stat. § 609.19, subd. 2(1) (1998), with fleeing a peace officer in a motor vehicle (fleeing) under Minn.Stat. § 609.487, subd. 3, as the predicate felonies. Craven's motion to dismiss the felony-murder counts was denied. Later, the defense moved to dismiss because of selective prosecution and that motion was also denied. Craven then waived his right to a jury trial. During the court trial, the district court granted Craven's motion for acquittal on the third-degree murder counts. At the end of trial, the court found Craven guilty of two counts of second-degree felony-murder. Craven was sentenced to 180 months in prison, and this appeal followed.

## ISSUE

May a defendant's actions be charged and prosecuted as felony-murder when fleeing a peace officer in a motor vehicle is the predicate felony?

## ANALYSIS

■ Craven argues that the district court erred by not dismissing the felony-murder charges. Craven only appeals from the district court's legal determinations, which are reviewed de novo. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn. 1996).

■ Craven argues that the district court erred by failing to dismiss each felony-murder charge because the more specific charge of fleeing causing death applies. Generally speaking, the same set of facts may constitute more than one offense if the statutes so provide. *State v. Bolsinger*, 221 Minn. 154, 165, 21 N.W.2d 480, 488 (1946). A defendant may then be

---

1. The results of a later test indicated that Craven had a blood-alcohol level of 0.204, which is more than twice the legal limit.

charged "under whichever law or statute [the prosecutor] sees fit," *id.* (citation omitted), so long as the prosecutor does not discriminate against a particular class of defendants. *State v. Chryst,* 320 N.W.2d 721, 722 (Minn.1982). But when two criminal statutes, one general and one specific, conflict because they have the same elements but differing penalties, the more specific statute governs over the more general statute, unless the legislature manifestly intends for the general statute to control. *State v. Kalvig,* 296 Minn. 395, 398, 209 N.W.2d 678, 680 (1973); *State v. Lewandowski,* 443 N.W.2d 551, 553 (Minn.App.1989); *State v. Williams,* 396 N.W.2d 840, 843–44 (Minn. App.1986); *see generally* Minn.Stat. § 645.26, subd. 1 (2000) (stating general rule that specific provisions govern over conflicting general provisions).

■ Here, the crime of felony-murder with fleeing as the predicate felony has the same elements as fleeing causing death. Both crimes require proof that a defendant (1) fled from a police officer (2) in a motor vehicle (3) causing a death. *Compare* Minn.Stat. § 609.19, subd. 2(1) (1998) (felony-murder), .487, subd. 3 (1998) (fleeing), *with* Minn.Stat. § 609.487, subd. 4 (1998) (fleeing causing death).

The state argues that the statutes indicate an intent that felony-murder controls in this situation. Where two statutes conflict, the general controls the specific only if the legislature indicates the manifest intent that the general statute should control. *Lewandowski,* 443 N.W.2d at 553. In *State v. Eaton,* the supreme held that "theft by swindle" could be an appropriate charge, despite the more specific crime of "securities fraud," because the legislature clearly expressed its intent to allow prosecutions for theft by swindle. 292 N.W.2d

260, 268 (Minn.1980). In *Eaton,* the manifest intent was demonstrated by the language of the securities-fraud statute, which stated:

nothing in [the securities-fraud statute] limits the power of the state to punish any person for any conduct which constitutes a crime under any other statute.

*Id.* at 268 (quoting Minn.Stat. § 80A.22, subd. 3 (1978)).

The fleeing causing death statute contains a proviso that indicates that the statute only applies where the death does not constitute murder or manslaughter.[2] Minn.Stat. § 609.487, subd. 4. This language states a broad preference for the more general provisions of the criminal code defining murder or manslaughter. But it does not manifest an intent that the general felony-murder statute should prevail over the more specific fleeing causing death statute.

If the flight, as was charged in this case, was an act "eminently dangerous to others and evincing a depraved mind, without regard for human life," it would constitute third-degree murder. Minn.Stat. § 609.195(a) (2000). If the act involved culpable negligence, it might constitute second-degree manslaughter. *See* Minn. Stat. § 609.205(1) (2000). If the act involved the use of a vehicle as a dangerous weapon, it would constitute felony-murder. *See* Minn.Stat. § 609.222 (2000) (felony crime of assault with a dangerous weapon). But in these situations, the more general statutes would include additional elements: conduct indicating a depraved mind for third-degree murder; culpable negligence for second-degree manslaughter; and assault with a dangerous weapon for second-degree murder.

---

**2.** When this statute was enacted in 1981, fleeing was only a gross misdemeanor and therefore not subject to the felony-murder rule. Minn.Stat. 609.487, subds. 3, 4 (1982).

Because the count charging Craven with felony-murder relies on fleeing a peace officer in a motor vehicle as the predicate felony, it does not require proof of any element not already required to prove fleeing a peace officer in a motor vehicle causing death. Moreover, the legislature, by enacting Minn.Stat. § 609.487, subd. 4(a) and creating the aggravated offense of fleeing causing death, has already used the element of death to aggravate the offense. There is no legislative intent permitting aggravation of the offense under the felony-murder statute using the same element of causing death.

■ The felony-murder statute in Minnesota incorporates the common law felony-murder rule under which a felon was made criminally liable for a death caused in the course of the commission of the felony. *See State v. Branson*, 487 N.W.2d 880, 881 (Minn.1992). The rule imputed malice where there was no specific intent to kill. *Id.* (citation omitted). The *Branson* court noted that the rule has been criticized for "its mechanical operation" and as being unfair. *Id.* at 882. Accordingly, the court has judicially limited the application of the felony-murder statute even in the absence of limiting language in the statute. *See State v. Cole*, 542 N.W.2d 43, 52–53 (Minn.1996). Even assuming the legislature intended to allow a person charged with fleeing police and causing a death to be charged with felony-murder, the statute cannot be applied that broadly.

It is well recognized that not every felony can serve as the predicate felony for a felony-murder charge. *See id.* (noting that only crimes involving special danger to human life may serve as the predicate felony). For example, the crime of manslaughter, although a felony, also requires a death. It cannot serve as the predicate felony for felony-murder without obliterating manslaughter as a separate offense. 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 7.5(g)(1) (1986). Similarly, offenders like Craven cannot be charged with felony-murder without extinguishing the separate offense of fleeing causing death. That is because the prosecution can obtain a more severe sentence for felony-murder without having to prove any additional element. *Compare* Minn.Stat. § 609.487, subd. 4(a) (providing maximum sentence of ten years for fleeing causing death); Minn. Sent. Guidelines V (classifying fleeing causing death as severity level 7 offense); *with* Minn.Stat. § 609.19, subd. 2(1) (providing 40–year maximum sentence for second-degree felony-murder); Minn. Sent. Guidelines V (classifying second-degree felony-murder as severity level 9 offense).

The felony-murder statute is not merely a more general statute under the *Kalvig* analysis resolving conflicts between general and specific statutes. It is a specialized statute in another sense; it embodies a common law doctrine and exists for the specific purpose of imposing criminal liability for certain unintended deaths. Where a death is already an element of an aggravated offense, as it is here under Minn. Stat. § 609.487, subd. 4, the felony-murder statute serves no purpose other than to ratchet up the permissible sentence. Even if, under the *Kalvig* analysis, the legislature manifested an intent, to permit this result, the felony-murder doctrine as it has been judicially construed cannot be stretched so far.

There is no support for the state's argument that *Kalvig* has been "confined to its facts." *See, e.g. Lewandowski*, 443 N.W.2d at 553, 555 (reversing conviction for "escape" because "release, failure to appear" was more specific). The state's argument that the statutes do not conflict under *Kalvig* because the predicate felony

for felony-murder must involve a "special danger" to human life, lacks merit. *See State v. Nunn*, 297 N.W.2d 752, 754 (Minn. 1980) (holding predicate felony must involve "special danger" to human life); *State v. Aarsvold*, 376 N.W.2d 518, 522 (Minn.App.1985), *review denied* (Minn. Dec. 30, 1985). The "special danger" requirement is not an element for the jury's determination, but is a preliminary matter for the court to determine. *See, e.g., State v. Cole*, 542 N.W.2d at 52–53. Moreover, in making this determination the court must consider the facts of the particular case as well as the elements of the predicate felony in the abstract. *Id.* at 53. Other than in a tortured hypothetical positing a "slow chase," the state points to no situation where felony murder could not be charged against a fleeing suspect who has caused a death. The conflict between the statutes, even taking the judicially imposed limitation on the felony-murder statute, is evident. Flight from a police officer in a motor vehicle is inherently dangerous and easily fits within the felony-murder doctrine. Allowing a felony-murder charge would swallow up the more specific charge of fleeing causing death.

Because the application of the felony-murder statute is inappropriate where fleeing causing death is a more specific crime and the legislature has expressed no intent that felony-murder should control, it is not necessary to reach Craven's arguments regarding due process violations. As the felony-murder charge is inappropriate, no discussion about fleeing causing death as a lesser charge is necessary.

## DECISION

The district court erred in failing to dismiss felony-murder charges with fleeing a peace officer as the predicate felonies because the charges violate the rule that the more specific crime prevails over a more general crime with the same elements, and also constitute an unwarranted extension of the felony-murder doctrine.

**Reversed.**