**STATE of Minnesota, Appellant,**

v.

**Raymond Vanshaw RICHMOND, Respondent.**

No. A06–2092.

Court of Appeals of Minnesota.

April 17, 2007.

County Attorney, Chad T. May, Assistant County Attorney, St. Cloud, MN, and Patrick C. Diamond, Special Assistant Stearns County Attorney, Minneapolis, MN, for appellant.

John M. Stuart, State Public Defender, Mark D. Nyvold, Special Assistant Public Defender, St. Paul, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge; KALITOWSKI, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge *.

The state appeals from a pretrial order dismissing on equal-protection grounds a complaint charging respondent Raymond Richmond with a third-degree controlled-substance crime for selling 0.2 grams of cocaine. The state argues that the district court clearly erred when it ruled that prosecuting Richmond under the third-degree statute for conduct purportedly also prohibited under the fourth-degree statute, which carries a lesser penalty, violates the guarantee of equal protection under the law. The state argues that although cocaine is defined as a narcotic drug and is listed as a schedule II controlled substance, the prosecutor retains discretion to charge under either statute absent a showing of a disparate impact or discriminatory enforcement. Because we hold that the legislature intended the sale of less than three grams of cocaine to constitute a third-degree rather than a fourth-degree controlled-substance crime, we reverse and remand to the district court for further proceedings.

Lori Swanson, Attorney General, St. Paul, MN, Janelle P. Kendall, Stearns

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

The facts on this appeal are undisputed. On November 21, 2005, St. Cloud police officers assigned to a gang strike task force arranged for a known and reliable confidential informant to make a controlled buy of cocaine from respondent Raymond Richmond. Police observed the confidential informant purchase from Richmond what was later determined to be 0.2 grams of cocaine.

In January 2006, the state charged Richmond with third-degree controlled-substance crime in violation of Minn.Stat. § 152.023, subd. 1(1) (2004) (proscribing the sale of one or more mixtures containing a narcotic drug). In May, Richmond moved to dismiss the complaint, contending that prosecuting him for sale of cocaine as a narcotic drug under the third-degree controlled-substance-crime statute violates the federal and state constitutions' equal-protection provisions because the statute punishes more severely identical behavior proscribed by the fourth-degree controlled-substance-crime statute, Minn.Stat. § 152.024, subd. 1(1) (2004) (proscribing the sale of a schedule I, II, or III controlled substance).

Following a hearing, the district court granted Richmond's pretrial motion and dismissed the complaint. The district court found subdivision 1(1) of the third-degree controlled-substance-crime statute unconstitutional as applied because the court could not discern any rational basis for punishing the sale of cocaine as a narcotic drug more severely than the sale of cocaine as a schedule II controlled substance. The court specifically found that "[a]n arbitrary distinction allows for arbitrary enforcement." The court concluded that because the elements of third-degree and fourth-degree controlled-substance crimes are identical with regard to cocaine, the third-degree controlled-substance-

crime statute is unconstitutional as applied to this case. The court denied the state's motion for reconsideration, and this appeal follows.

## ISSUE

Did the district court err by finding that prosecuting the sale of cocaine as a third-degree crime under Minn.Stat. § 152.023, subd. 1(1) (2004), violates equal-protection principles because it punishes more severely conduct also purportedly proscribed as a fourth-degree crime by Minn.Stat. § 152.024, subd. 1(1) (2004)?

## ANALYSIS

"In an appeal from a pretrial order, this court will reverse the district court's dismissal of charges only if the state clearly and unequivocally shows that the district court erred in its judgment and that the error, unless reversed, will critically affect the outcome of the prosecution." *State v. Meyer,* 646 N.W.2d 900, 902 (Minn.App. 2002). It is not disputed that dismissing the complaint against Raymond had the requisite critical impact on the prosecution. The state must therefore show error. Because the district court based its ruling on the construction of a statute and the application of a constitutional provision, our review is de novo. *Id.*

■■■ Appellate courts are "ordinarily loathe to intrude or even inquire into the legislative process on matters of criminal punishment." *State v. Clausen,* 493 N.W.2d 113, 115 (Minn.1992) (quoting *State v. Russell,* 477 N.W.2d 886, 888 n. 2 (Minn.1991)). The power to declare a statute unconstitutional should be "exercised with extreme caution and only when absolutely necessary." *State v. Behl,* 564 N.W.2d 560, 566 (Minn.1997) (quotation omitted). The party challenging the constitutionality of a Minnesota statute bears the very heavy burden of establishing be-

yond a reasonable doubt that the statute violates a constitutional provision. *Id.* When possible, a reviewing court must construe and interpret a statute to uphold its constitutionality. *Fedziuk v. Comm'r of Pub. Safety*, 696 N.W.2d 340, 344 (Minn. 2005); *see also* Minn.Stat. § 645.16 (2006) (obliging courts to effectuate the legislature's intent).

## I.

■ The state argues that the district court erred by finding the third-degree controlled-substance-crime statute, Minn. Stat. § 152.023, subd. 1(1) (2004), unconstitutional as applied. Specifically, the state argues that Richmond failed to show that the statute was unconstitutional beyond a reasonable doubt because he made no showing that the third- and fourth-degree controlled-substance-crime statutes are in fact unconstitutionally applied. The state also argues that there is a genuine and substantial reason for differentiating between the sale of narcotic drugs and other schedule II controlled substances. Our review of the statutory scheme for controlled-substance crimes convinces us that the legislature intended to treat cocaine specifically as a schedule II narcotic drug rather than as a generic schedule II controlled substance, and intended to prohibit the sale of cocaine, depending on the total weight at issue, as either a first-, second-, or third-degree, but not as a fourth-degree, controlled-substance crime. *See State v. Vail*, 274 N.W.2d 127, 135–36 n. 14 (Minn.1979) (recognizing and upholding constitutionality of statutory scheme that separately defines and penalizes violations with narcotic drugs included in schedules of controlled substances in three tiers: (1) narcotic drugs, (2) other scheduled controlled substances, and (3) marijuana); *see also Clausen*, 493 N.W.2d at 118 (holding that creation of degrees of punishment based on possession of greater amounts of controlled substances is valid legislative action).

Chapter 152 of the Minnesota Statutes defines "cocaine" in part as "coca leaves and any salt, compound, derivative, or preparation of coca leaves, including ... the salts and isomers of cocaine and ecgonine, and the salts of their isomers and any salt, compound, derivative, or preparation thereof that is chemically equivalent or identical with any of those substances." Minn.Stat. § 152.01, subd. 3a (2004). Specifically included within the statute's definition of a "narcotic drug" are coca leaves, "[a] compound, manufacture, salt, derivative, or preparation of ... coca leaves," and "any compound, manufacture, salt, derivative, or preparation thereof, which is chemically identical" to coca leaves. *Id.,* subd. 10 (2004). By contrast, "controlled substance" is broadly defined as "a drug, substance, or immediate precursor in Schedules I through V of section 152.02." *Id.,* subd. 4 (2004). Cocaine is listed in schedule II of controlled substances. *Id.* § 152.02, subd. 3(1)(d) (2004). The schedules of controlled substances were first enacted by the legislature in 1971, and the classification system is based on the federal Uniform Controlled Substances Act of 1970. *Vail,* 274 N.W.2d at 135; 1971 Minn. Laws ch. 937, § 12, at 1925–31.

The clear import from these statutory definitions is that, under Minnesota's classification system, all narcotic drugs are controlled substances, but not all controlled substances are narcotic drugs. While cocaine could therefore be considered a *schedule II controlled substance*, under the plain language of these statutory definitions, cocaine is more precisely a *schedule II narcotic drug. See State v. Benniefield*, 678 N.W.2d 42, 44 (Minn. 2004) (stating that cocaine is a schedule II narcotic drug); *State v. Vernon*, 283 N.W.2d 516, 518–19 (Minn.1979) (holding

that statutorily listing cocaine in schedule II and classifying it as a narcotic drug is rational and does not violate equal protection).

■ This distinction is significant when construing the controlled-substance-crime statutes at issue here. "We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000); *see also* Minn.Stat. § 645.17(2) (2006) (providing that courts should presume legislature intended entire statute to be effective). The statutory scheme of Minnesota's controlled-substance-crime statutes, which the legislature initially codified in 1989, specifically proscribes and punishes in multiple tiers the sale and possession of cocaine as a schedule II narcotic drug, in decreasing degrees of severity depending on the total weight involved. Minn.Stat. §§ 152.021–152.025 (2004); 1989 Minn. Laws ch. 290, art. 3, §§ 8–12, at 1596–1601. Selling a mixture containing a total weight of ten grams or more of cocaine, or possessing a mixture containing a total weight of 25 grams or more of cocaine, is a first-degree controlled-substance crime. Minn.Stat. § 152.021, subds. 1(1), 2(1). The second-degree controlled-substance-crime statute proscribes the sale of a total weight of three grams or more of cocaine and the possession of a total weight of six grams or more of cocaine. *Id.* § 152.022, subds. 1(1), 2(1). The sale of a mixture "containing a narcotic drug" and the possession of a total weight of three grams or more of cocaine constitute a third-degree controlled-substance crime. *Id.* § 152.023, subds. 1(1), 2(1). Similarly, the sale or possession of "a narcotic drug other than cocaine, heroin, or methamphetamine" is proscribed by the first-, second-, and third-degree

controlled-substance-crime statutes depending on the narcotic drug's total weight. *See, e.g.*, §§ 152.021, subd. 1(2) (proscribing sale of 50 grams or more), 152.022, subd. 1(2) (proscribing sale of ten grams or more), 152.023, subd. 2(2) (proscribing possession of ten grams or more). By contrast, the fourth-degree controlled-substance-crime statute proscribes *only* selling or possessing with intent to sell "a controlled substance classified in schedule I, II, or III" and makes no reference to "narcotic drugs." *Id.* § 152.024, subds. 1(1), 2(2).

Even when proscribed acts are generally related to each other, "it is certainly within the legislative power to determine that each particular act engenders different types and degrees of harm to society ... and therefore should be treated separately." *State v. Witt*, 310 Minn. 211, 216, 245 N.W.2d 612, 616 (1976) (discussing statutory provisions penalizing aggravated criminal-sexual conduct with varying severity). Construing, as we must, the statutory scheme as a harmonious whole and in light of each section to avoid conflicting interpretations, we find that the legislature clearly intended to prohibit the sale or possession of "narcotic drugs"—including cocaine—as a first-, second- or third-degree, but not as a fourth-degree, controlled-substance crime. Because Richmond allegedly sold less than three grams of cocaine, the state properly charged him with third-degree controlled-substance crime.

The district court reasoned that, because cocaine is defined as a narcotic drug and classified as a schedule II controlled substance, the sale of cocaine violates both the third- and fourth-degree controlled-substance-crime statutes, which provide different penalties. This construction is plausible facially only if the third- and fourth-degree statutes are read in isolation and

without due regard to legislative intent. But the nominal inclusion of a narcotic drug within a particular schedule of controlled substances is of little import because "the classification is not a controlling factor in the scheme of punishment." *Vail*, 274 N.W.2d at 135 (finding nominal inclusion of marijuana within schedule I had little impact in determining whether controlled-substance classification scheme violates equal-protection guarantees).

Extending the district court's construction to its logical conclusion would seemingly eviscerate the entire controlled-substance-crime statutory scheme. For example, the state would be required to charge the sale of ten grams of cocaine as a second-degree offense rather than a first-degree offense because the total weight is "three grams *or more*" of cocaine. To permit the state to charge the crime as a first-degree offense arguably would raise the same equal-protection concerns that Richmond propounds here. We refuse to construe the statutory scheme in a way that would lead to such an absurd and unreasonable result. *See* Minn.Stat. § 645.17(1) (2006) (presuming that legislature does not intend absurd or unreasonable result); *State v. Koenig,* 666 N.W.2d 366, 372–73 (Minn.2003) (specifying applicable rules for construction of a criminal statute); *Septran, Inc. v. Indep. Sch. Dist. No. 271,* 555 N.W.2d 915, 919 (Minn.App.1996) (noting that well-established rules of statutory construction require appellate courts to harmonize apparently conflicting provisions when possible), *review denied* (Minn. Feb. 26, 1997); *In re Appeal of Crow Wing County Attorney,* 552 N.W.2d 278, 280 (Minn.App.1996) (noting basic rule of statutory construction that laws are to be construed together, if possible, to give effect to both provisions, even if they apparently conflict),

*review denied* (Minn. Oct. 29, 1996). Rather, applying accepted principles of statutory construction, we hold that the legislature intended the sale of a mixture containing a total weight of less than three grams of cocaine, that is, a mixture "containing a narcotic drug," to be punished as a third-degree, and not as a fourth-degree, controlled-substance crime.

Our holding also leads us to conclude that the third-degree and fourth-degree controlled-substance-crime statutes are not irreconcilably in conflict because, under the statutory scheme as a whole, they proscribe different crimes. *See State v. Williams,* 396 N.W.2d 840, 845–46 (Minn. App.1986) (analyzing whether two statutes covered same conduct to create irreconcilable conflict). Criminal statutes may conflict when they have the same elements but differing penalties. *State v. Craven,* 628 N.W.2d 632, 635 (Minn.App.2001) (citing *State v. Kalvig,* 296 Minn. 395, 398, 209 N.W.2d 678, 680 (1973)), *review denied* (Minn. Aug. 15, 2001). The essential elements of third-degree controlled-substance crime require the state to prove that the defendant: (1) unlawfully sold one or more mixtures containing a narcotic drug; and (2) knew or believed that the substance sold was a narcotic drug. Minn.Stat. § 152.023, subd. 1(1); 10A *Minnesota Practice,* CRIMJIG 20.16 (2006). The essential elements of a fourth-degree offense require proof that the defendant: (1) unlawfully sold one or more mixtures containing a schedule I, II, or III controlled substance; and (2) knew or believed that the substance sold was such a controlled substance. Minn.Stat. § 152.024, subd. 1(1); 10A *Minnesota Practice,* CRIMJIG 20.24. Because, as previously noted, a narcotic drug is specifically and narrowly defined, not all schedule I, II, or III controlled substances are narcotic drugs, and

therefore not all sales of those controlled substances will also constitute a third-degree controlled-substance crime. *See State v. Barnes*, 713 N.W.2d 325, 331–32 (Minn.2006) (finding domestic-abuse murder and depraved-mind murder statutes do not irreconcilably conflict in part because even if all domestic-abuse incidents could be considered eminently dangerous, a depraved-murder element, not all eminently dangerous acts constitute domestic abuse); *Williams*, 396 N.W.2d at 844 (finding forgery and false-representation statutes not irreconcilably in conflict in part because acts prohibited under false representation statute may not constitute offense of forgery statute). The third- and fourth-degree controlled-substance-crime statutes therefore are not irreconcilably in conflict.

■ But even if we construed the third- and fourth-degree controlled-substance-crime statutes as irreconcilably in conflict with respect to cocaine, we would reach the same result by applying established statutory-construction principles for overlapping statutes. Ordinarily, when a general provision of one statute conflicts with a specific provision of another statute, courts should construe the two statutes to give effect to both when possible. Minn. Stat. § 645.26, subd. 1 (2006). But when the two statutes' provisions irreconcilably conflict, the more specific provision should prevail over the more general provision unless the legislature intended the general provision to control. *Id.; Kalvig*, 296 Minn. at 398–99, 209 N.W.2d at 680; *see also Williams*, 396 N.W.2d at 843–44 (noting that for *Kalvig* to apply, statutes must have *identical* elements but differing penalties, conflict, and be incapable of reconciliation). The provision of the third-degree statute at issue here is expressly limited to the sale of "narcotic drugs," and therefore is more specific than the fourth-degree statute, which generally proscribes

the sale of schedule I, II, or III controlled substances, a much broader classification. *Compare* Minn.Stat. § 152.023, subd. 1(1), *with id.* § 152.024, subd. 1(1). The proscription against the sale of less than three grams of cocaine, a schedule II narcotic drug, is therefore controlled by the more specific third-degree controlled-substance-crime statute. *See Craven*, 628 N.W.2d at 637 (holding that death resulting while fleeing police officer is covered by specific fleeing-causing-death statute rather than general felony-murder statute).

Richmond's suggested "fix" for the statutory scheme of expressly excluding cocaine (and presumably every other narcotic drug listed in schedules I, II, or III) from the fourth-degree statute is more properly directed to the legislature than to the judiciary, but we note that under our construction such an amendment is unnecessary. *See State v. Anderson*, 280 Minn. 461, 462, 159 N.W.2d 892, 894 (1968) (recognizing that the definition of crimes and penalties lies within the province of the legislature). We hold that the clear legislative intent of the multi-tiered controlled-substance-crime statutory scheme is to proscribe the sale of a mixture containing less than three grams of cocaine as a third-degree controlled-substance crime.

## II.

■ Normally, our construction of a statute that resolves an issue on appeal would not necessitate reaching the constitutional issue raised. *See In re Senty–Haugen*, 583 N.W.2d 266, 269–70 n. 3 (Minn.1998) (noting general practice is to avoid constitutional ruling if case can be decided on another basis). But we choose to address the constitutional challenge as well. Richmond argued to the district court, and the court found, that the third-degree controlled-substance-crime statute violates equal-protection guarantees as ap-

plied because it provides more severe punishment for purportedly the same conduct proscribed under the fourth-degree statute and committed under the same circumstances by similarly situated persons.

■ "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445, 43 S.Ct. 190, 191, 67 L.Ed. 340 (1923) (quotation omitted). The equal protection clauses of both the United States and Minnesota constitutions "mandate that all similarly situated individuals shall be treated alike." *Scott v. Minneapolis Police Relief Ass'n*, 615 N.W.2d 66, 74 (Minn.2000). But it is only "invidious discrimination" that is deemed constitutionally offensive in an equal-protection claim. *Id.* Thus, "[a]n individual challenging a statute on equal protection grounds must demonstrate that the statute classifies individuals [either on its face or in practice] on the basis of some suspect trait." *State v. Frazier*, 649 N.W.2d 828, 833–34 (Minn.2002). A statute challenged on equal-protection grounds, therefore, is presumed constitutional unless a fundamental right or suspect class is involved. *Benniefield*, 678 N.W.2d at 45. A party may raise an equal protection challenge to a statute based on the statute's express terms, that is, a "facial" challenge, or based on the statute's application, that is, an "as-applied" challenge. *See Frazier*, 649 N.W.2d at 832–33 (discussing as-applied challenge to facially neutral crime-for-benefit-of-gang statute on racially disparate-impact basis); *Witt*, 310 Minn. at 213–14, 245 N.W.2d at 615 (discussing facial challenge to former aggravated-rape statute that purportedly singled out particular class of male offenders).

■ "By definition, a facial challenge to a statute on equal-protection grounds asserts that at least two classes are created by the statute, that the classes are treated differently under the statute, and that the difference in treatment cannot be justified." *In re McCannel*, 301 N.W.2d 910, 916 (Minn.1980). Richmond does not assert that the third-degree controlled-substance-crime statute establishes classifications based on some suspect class or trait; the statute is facially neutral and applies to all persons. Richmond must therefore demonstrate beyond a reasonable doubt that the third-degree statute violates equal-protection guarantees as applied in practice. *See Frazier*, 649 N.W.2d at 834 (stating that, when statute challenged on racially disparate-impact grounds is facially neutral, challenging party must demonstrate that statute creates a racial classification in practice).

■ A facially neutral statute can violate the guarantee of equal protection if it is applied in a way that makes distinctions between similarly situated people without a legitimate government interest. *R.B. v. C.S.*, 536 N.W.2d 634, 637 (Minn. App.1995). "A statute violates the equal protection clause when it prescribes different punishments or different degrees of punishment for the same conduct committed under the same circumstances by persons similarly situated." *Frazier*, 649 N.W.2d at 837. "An essential element of an equal protection claim is that the persons claiming disparate treatment must be similarly situated to those to whom they compare themselves." *Peterson v. Minn. Dep't of Labor & Indus.*, 591 N.W.2d 76, 79 (Minn.App.1999) (quotation omitted), *review denied* (Minn. May 18, 1999).

But Richmond did not assert that the state charged him with the third-degree offense based on his membership in some suspect class or that others similarly situated were charged for the same conduct (namely, selling less than three grams of cocaine) under the fourth-degree controlled-substance-crime statute. Neither did the district court make such a finding. Rather, the district court—without differentiating its analysis between the federal and state equal-protection provisions—relied primarily on the *potential* for unfettered prosecutorial discretion in electing whether to charge a defendant under the statute with the harsher penalty. In *United States v. Batchelder*, the Supreme Court rejected this exact analysis as "factually and legally unsound." 442 U.S. 114, 124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979). The *Batchelder* Court affirmed a long-standing principle by holding that "when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *Id.* at 123–24, 99 S.Ct. at 2204. The Court reasoned that "there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements." *Id.* at 125, 99 S.Ct. at 2205. Although a prosecutor "may be influenced by the penalties available upon conviction, ... this fact, standing alone, does not give rise to a violation of the Equal Protection or Due Process Clause." *Id.* And while selectivity in enforcement of criminal laws is subject to constitutional constraints, the Equal Protection Clause prohibits selective enforcement only when it is based on an unjustifiable standard such as race, religion, or another arbitrary classification. *Id.* at 125 & n. 9, 99 S.Ct. at 2204–05 & n. 9; *see also*

*United States v. Bass*, 794 F.2d 1305, 1310 & n. 5 (8th Cir.1986) (relying on *Batchelder* and rejecting equal-protection claim based on prosecutor electing to charge defendant under enhanced-penalty statute when defendant failed to allege any discriminatory prosecution). We therefore hold that the third-degree controlled-substance-crime statute does not violate the federal equal-protection provision.

Similarly, under Minnesota law, "[t]he possibility that a law *may* actually fail to operate with equality is not enough to invalidate it." *John Hancock Mut. Life Ins. Co. v. Comm'r of Revenue*, 497 N.W.2d 250, 254 (Minn.1993) (quotation omitted). Several Minnesota appellate court decisions have cited *Batchelder* with approval and held that generally, absent a contrary legislative intent or discrimination against a particular class of defendants, a prosecutor may charge under any statute that is violated regardless of the penalty. *See, e.g., State v. Love*, 350 N.W.2d 359, 362 (Minn.1984) (addressing charging under criminal-sexual-conduct versus intrafamilial-sexual-conduct statute); *State v. Chryst*, 320 N.W.2d 721, 722–23 (Minn.1982) (addressing charging under theft versus odometer-tampering statute); *State v. Walker*, 319 N.W.2d 414, 416 (Minn.1982) (addressing charging under theft versus cattle-rustling statute); *Williams*, 396 N.W.2d at 842–43 (addressing charging under forgery versus false-representation statute). Indeed, as early as 1897, the supreme court stated that "[i]t is well settled that the same act may constitute an offense ... under several different statutes, and the prosecutor may proceed under whichever law or statute he sees fit." *State v. Holt*, 69 Minn. 423, 425, 72 N.W. 700, 701 (1897). The fact that there may be reasons, such as a lesser penalty, for a defendant wanting to be prosecuted under one statute rather than

another "does not mean that a prosecutor is obligated to prosecute him that way." *Love,* 350 N.W.2d at 361.

As noted, the guarantee of equal protection mandates that similarly situated individuals shall be treated alike. *Reed v. Albaaj,* 723 N.W.2d 50, 55 (Minn. App.2006). "Essential to a ruling that equal protection has been denied by discriminatory administration of the laws is a finding that the persons treated disparately are similarly situated." *State by Spannaus v. Lutsen Resorts, Inc.,* 310 N.W.2d 495, 497 (Minn.1981). But Richmond fails to make any showing that others similarly situated were prosecuted under the less severe fourth-degree statute rather than the third-degree statute. When a defendant fails to show that he is being treated differently from similarly situated individuals, his as-applied equal-protection argument fails. *Reed,* 723 N.W.2d at 55 (holding that servicemember confined in military prison for crimes committed while in military service is not similarly situated to servicemembers not so confined). Because Richmond relies merely on the potential for discriminatory enforcement and has not shown that others similarly situated were charged under the statute with a lesser penalty, his as-applied equal-protection claim fails.

## DECISION

Construing the statutory scheme of the controlled-substance crimes as a whole evinces a clear legislative intent that the sale of less than three grams of cocaine, a schedule II narcotic drug, constitutes a third-degree, and not a fourth-degree, controlled-substance crime. Because Richmond failed to show that he was charged with a third-degree offense based on some suspect classification or trait, or that others similarly situated were charged instead with a fourth-degree offense, his equal-protection claim fails. We conclude that the district court erred by finding the third-degree controlled-substance-crime statute unconstitutional as applied. Accordingly, we reverse the judgment of the district court, order the complaint reinstated, and remand to the district court for further proceedings consistent with this opinion.

**Reversed and remanded.**