STATE of Minnesota, Plaintiff,

v.

Matthew Raymond SMOOT, Defendant.

No. A06–2342.

Court of Appeals of Minnesota.

Sept. 4, 2007.

Lori Swanson, Attorney General, St. Paul, MN; and Donald F. Ryan, Crow Wing County Attorney, Kristine R. De-May, Assistant County Attorney, Brainerd, MN, for plaintiff.

R. Daniel Rasmus, Christensen, Laue & Rasmus, Minneapolis, MN; and Eric L. Newmark, Birrell & Newmark, Ltd., Minneapolis, MN, for defendant.

Considered and decided by HUDSON, Presiding Judge; LANSING, Judge; and HALBROOKS, Judge.

## OPINION

LANSING, Judge.

The district court denied Michael Smoot's motion to dismiss a charge of second-degree unintentional murder from a multi-count complaint. Following the denial of the motion, the district court certified as important and doubtful the question of whether the felony of first-degree driving while impaired can serve as a predicate felony for the charge of second-degree felony murder under Minn.Stat. § 609.19, subd. 2(1) (2004). We answer the certified question in the affirmative.

## FACTS

Michael Smoot was driving home from a Crow Wing County bar in July 2005, when he swerved into oncoming traffic and struck a car that was driven by sixteen-year-old Joseph Jordan. Jordan was pronounced dead at the scene. Two passengers in Smoot's car were also injured in the crash. A blood test taken within two hours of the accident showed Smoot's alcohol concentration was .29.

According to passengers in Smoot's car, Smoot had consumed a substantial amount of alcohol and smoked marijuana over the course of the evening. As Smoot was leaving the bar at the end of the evening, he

was approached by a man who told him that he should not drive. Smoot refused the man's offer to give him a ride home.

Once in his car, Smoot failed to remain in his lane of traffic, swerved all over the road, drove against the flow of traffic, and refused warnings of the passengers to pull over and attempt to obtain a sober driver. When the passengers saw Jordan's car approaching from the opposite direction, they begged Smoot to get back into his correct driving lane. Smoot reportedly laughed in response and continued in the path of travel that resulted in a nearly head-on collision. Witnesses estimated that he was driving at a rate of 75–85 miles per hour and accelerating at the time of the collision.

Smoot's driving record includes three convictions for drunk driving. Twice, in 1999 and 2004, he pleaded guilty to driving while impaired in Minnesota. In 2002, he pleaded guilty to operating while intoxicated in Wisconsin. Smoot's Minnesota driver's license was revoked based on the Wisconsin conviction. As a result, Crow Wing County charged Smoot with first-degree DWI, which is a felony offense. *See* Minn. Stat. §§ 169A.20, 169A.24 (2004) (establishing felony-level offense for DWI committed within ten years of first of three qualifying impaired-driving incidents). The county also charged Smoot with second-degree felony murder, using the felony DWI as the predicate offense. *See* Minn.Stat. § 609.19, subd. 2(1) (2004) (describing offense as unintentional murder of human being while committing or attempting to commit felony-level offense).

## ISSUES

I.   Does felony driving while impaired under Minn.Stat. § 169A.24 (2004) involve a special danger to human life?

II.  Can a strict-liability crime serve as a predicate offense for second-de-

gree unintentional felony murder under Minn.Stat. § 609.19, subd. 2(1) (2004)?

III. Is criminal vehicular homicide a more specific offense that exclusively governs Smoot's conduct?

## ANALYSIS

Michael Smoot raises three arguments against using felony driving while impaired (DWI) as a predicate offense for unintentional felony murder. He argues (1) that felony DWI is not inherently dangerous when viewed in the abstract, (2) that a strict liability crime cannot serve as a predicate offense for felony murder, and (3) that criminal vehicular homicide is a more specific offense that exclusively governs Smoot's conduct. We reject Smoot's arguments and conclude that felony DWI can serve as a predicate offense for unintentional murder under Minn.Stat. § 609.19, subd. 2(1) (2004).

## I

To serve as a predicate offense for second-degree unintentional felony murder, an offense must involve a special danger to human life. *State v. Anderson,* 666 N.W.2d 696, 700–01 (Minn.2003). The special danger to human life must be established both as the offense is committed *and* in the abstract. *Id.* We determine whether an offense involves a special danger to human life in the abstract based on "the elements of the underlying felony." *Id.* The elements of the underlying felony need not include a reference to death or bodily harm. *State v. Mitchell,* 693 N.W.2d 891, 894–95 (Minn.App.2005), *review denied* (Minn. June 28, 2005). The elements must, however, demonstrate that the felony is inherently dangerous and poses a significant danger to human life. *Anderson,* 666 N.W.2d at 701. We review de novo the district court's determination

that an offense involves a special danger to human life. *Id.* at 698.

An individual is guilty of felony DWI if he or she violates Minn.Stat. § 169A.20 (2004) either (1) within ten years of the first of three or more qualified alcohol-related incidents or (2) with a prior felony DWI on his or her record. Minn.Stat. § 169A.24 (2004). An individual violates section 169A.20 if, in relevant part, he or she drives, operates, or physically controls a motor vehicle while under the influence of alcohol or with an alcohol concentration of at least .08. Minn.Stat. § 169A.20, subd. 1(1), (5). Thus, the statute regulates three types of impaired behavior: (1) driving a vehicle, (2) operating a vehicle, and (3) being in control of a vehicle. *See State v. Starfield,* 481 N.W.2d 834, 838–39 (Minn.1992) (concluding that DWI conviction can be based on physical control of inoperable vehicle).

Smoot does not—at this point in the proceedings—argue that his actions, as committed, did not involve a special danger to human life. Instead, he argues that felony DWI does not involve a special danger to human life in the abstract. According to Smoot's argument, the elements do not demonstrate a danger to human life because they do not include a reference to the possibility of injury or death, and allow conviction without evidence of actual impairment and in clearly nondangerous situations.

Smoot's arguments, however, do not address the relevant standard. To represent a special danger to human life, the elements of the crime need not refer to death or the possibility of injury. *Mitchell,* 693 N.W.2d at 894–95. Nor need they refer to impairment. The felony must only be *inherently dangerous* in the abstract. *Anderson,* 666 N.W.2d at 701. In other words, a significant degree of risk must inhere in the elements of the crime.

■ Thus, Smoot's hypothetical situations in which felony DWI is committed in a nondangerous manner are consistent with our conclusion that the crime involves a special danger in the abstract. A crime is inherently dangerous if its elements involve a significant danger to human life. *Anderson,* 666 N.W.2d at 701. The crime need not cause an *actual* injury in every case. Therefore, an inherently dangerous crime can be committed without causing injury. In such cases, the crime cannot serve as a predicate offense for felony murder because it will not involve a special danger to human life *as committed.*

In *Anderson,* the supreme court analyzed the elements of a crime—felon in possession of a firearm—that could never pose a risk to human life without further action by the defendant. *Id.* "While the *use* of a firearm can pose significant danger to human life, simple possession—standing alone—does not." *Id.* Felony DWI is akin to use of a firearm, rather than possession. An impaired person who drives, operates, or takes physical control of a vehicle poses an indisputable risk to human life. *See Starfield,* 481 N.W.2d at 837 ("Alcoholic behavior can be unpredictable."). This danger is even more acute in the case of felony DWI because the defendant is a repeat offender. *See State v. Henning,* 666 N.W.2d 379, 388 (Minn.2003) (discussing special risks posed by repeat DWI offenders). Even if physical control is not inherently dangerous in the abstract, courts can separately examine the inherent dangerousness of driving or operating a vehicle while impaired. *See People v. Patterson,* 49 Cal.3d 615, 262 Cal.Rptr. 195, 778 P.2d 549, 556 (1989) (concluding that "each offense set forth in the statute should be examined separately to determine its inherent dangerousness").

Smoot argues that felony DWI does not create a special danger any greater than

that created by misdemeanor DWI. The special-danger inquiry, however, examines danger in the abstract and actual danger, not comparative danger. *Anderson,* 666 N.W.2d at 699. In enacting the Minnesota Impaired Driving Code, the legislature expressed its intent to eradicate drunk driving and promote public safety on the state's highways. *State v. Horning,* 535 N.W.2d 296, 299–300 (Minn.1995); *see Minn. Dep't of Pub. Safety v. Juncewski,* 308 N.W.2d 316, 319 (Minn.1981) (noting that legislature intended that statute be given broadest possible effect). That expression of legislative intent includes an inherent determination that driving, operating, or physically controlling a motor vehicle while under the influence of alcohol poses a significant danger to human life without regard for how the offense is ultimately charged. As a result, the elements of felony DWI satisfy the special-danger requirement.

## II

■ In addition, Smoot argues that felony DWI cannot serve as a predicate offense for felony murder because felony DWI is a strict-liability offense. At common law, a murder conviction required proof of malice, but the existence of malice could be proved indirectly. *See State v. Branson,* 487 N.W.2d 880, 881–82 (Minn. 1992) (discussing history of common-law felony murder); *State v. Weltz,* 155 Minn. 143, 146, 193 N.W. 42, 43 (1923) (noting that malice "need not be proved directly"). Smoot asserts that the common-law felony-murder rule imputed the malice required for murder from the mens rea necessary for the predicate offense. Thus, he argues, Minnesota's felony-murder statute cannot apply in this circumstance because

it incorporates the common law of felony murder and the commission of felony DWI does not require malice.

For purposes of our analysis, we will assume, as Smoot argues and the state does not dispute, that felony DWI is a strict liability offense. *Cf. State v. Al–Naseer,* 734 N.W.2d 679, 683 (Minn.2007) (noting that when "statutes are silent about the mens rea element [courts must] determine what degree of knowledge is required for crime"). Nonetheless, we conclude that a felony DWI—despite the lack of a specific mens rea element—can serve as a predicate offense for felony murder.

■ Our analysis begins with the text of the statute at issue. In general, when a statute's language is unambiguous, we must apply the statute's plain meaning. *Hans Hagen Homes, Inc. v. City of Minnetrista,* 728 N.W.2d 536, 539 (Minn.2007). The legislature has instructed that "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (2006).

The second-degree unintentional-felony-murder statute is not ambiguous. A person commits the crime if he or she "causes the death of a human being, without intent to effect the death of any person, while committing or attempting to commit a felony offense other than criminal sexual conduct in the first or second degree with force or violence or a drive-by shooting." [1] Minn.Stat. § 609.19, subd. 2(1) (2004). Because first-degree DWI is a felony offense, the plain meaning of the statute permits

---

1. The three felonies explicitly excluded from the felony-murder rule set forth in Minn.Stat. § 609.19, subd. 2(1), fall under other felony-murder provisions. *See* Minn.Stat. § 609.185(a)(2) (2004) (making criminal sexual conduct predicate offense for first-degree felony murder); Minn.Stat. § 609.19, subd. 1(2) (making commission of drive-by shooting predicate offense for second-degree felony murder).

first-degree DWI to be used as a predicate offense for felony murder.

In interpreting the felony-murder statute, however, "we are not writing on a clean slate." *Anderson,* 666 N.W.2d at 701 n. 7. The language of the felony murder statute has been interpreted to require that the felony involve "a special danger to human life." *Id.* at 700. The supreme court in *Anderson* recognized that "under its plain language, except for the three specified exceptions, the statute appears to apply to all other felonies" and that the statute's meaning has been refined by judicial limitations set forth in precedent. *Id.* We must therefore decide whether the statute, as interpreted, forbids the use of strict-liability crimes as predicate offenses. To reach this decision, we must examine the history of the judicially created requirement that the felony involve a special danger to human life.

Before 1981, the felony-murder statute required that the predicate offense be committed "upon or affecting the person whose death was caused or another." Minn.Stat. § 609.195 (1980). The supreme court interpreted this language as isolating "for special treatment those felonies that involve some special danger to human life." *State v. Nunn,* 297 N.W.2d 752, 753 (Minn. 1980). In 1981, the legislature amended the felony-murder statute and removed the requirement that the crime be committed upon or affect the person whose death was caused. 1981 Minn. Laws ch. 227, § 10, at 1010. Following this amendment, the supreme court continued to require that the felony involve a special danger to human life. *See Anderson,* 666 N.W.2d at 699–700 (citing *State v. Back,* 341 N.W.2d 273, 276–77 (Minn.1983), and *State v. Cole,* 542 N.W.2d 43, 53 (Minn.1996)).

In *Anderson,* the supreme court discussed this history in the course of determining whether the predicate felony must involve a special danger to human life when considered in the abstract. *Id.* at 669–701. The supreme court reasoned that "when the legislature does not amend our construction of a statute, the court's construction stands." *Id.* at 700.

We do not think that *Anderson* provides a basis for judicially imposing an additional requirement that the predicate offense include a specific mens rea element. Many strict-liability crimes, of course, do not involve a special danger to human life and therefore, even if they are classified as felonies, they could not be used as predicate offenses. But Smoot has cited no case that specifically requires that the predicate felony include a mens rea element. Thus, unlike the facts of *Anderson,* we do not face an established interpretation that has been followed by legislative acquiescence. The legislature's unambiguous language does not incorporate the common law of felony murder, and the supreme court has accepted this language subject to the limitation that the felony-murder statute is interpreted to "isolate for special treatment those felonies that involve some special danger to human life." *Anderson,* 666 N.W.2d at 699 (quotation omitted). Thus, we conclude that our decision should be based on the text of the felony-murder statute as it has been interpreted. Because felony DWI is "a felony offense other than criminal sexual conduct in the first or second degree with force or violence or a drive-by shooting," the plain text of Minn.Stat. § 619.19 permits its use as a predicate offense for felony murder so long as it presents a special danger to human life.

### III

Finally, Smoot argues that felony DWI cannot be a predicate offense for felony murder because his conduct is exclusively governed by the more specific offense of criminal vehicular homicide.

When a general statute conflicts with a specific statute, "the more specific statute governs over the more general statute, unless the legislature manifestly intends for the general statute to control." *State v. Craven*, 628 N.W.2d 632, 635 (Minn.App. 2001), *review denied* (Minn. Aug. 15, 2001). A conflict arises if the two statutes "have the same elements but differing penalties." *Id.*

In *Craven*, the defendant was convicted of second-degree felony murder with fleeing a peace officer in a motor vehicle as the predicate offense. *Id.* at 634. This court noted that a conviction for fleeing a peace officer causing death would require proof of exactly the same elements. *Id.* at 635. Because the more specific offense of fleeing a peace officer causing death governed the defendant's conduct, we held that fleeing a peace officer in a motor vehicle could not be used as a predicate offense for second-degree felony murder. *Id.* at 637.

Felony DWI, however, requires proof of an element that criminal vehicular homicide does not: prior alcohol-related offenses. Thus, felony DWI can only be committed at the end of a course of conduct involving multiple DWI convictions. Minn.Stat. § 169A.24, subd. 1 (incorporating driving history as element of offense). Criminal vehicular homicide, in contrast, involves a single incident of dangerous driving. Minn.Stat. § 609.21, subd. 1 (2004) (establishing liability without regard for driving history). To convict Smoot of felony murder with felony DWI as the predicate offense, the state would need to prove that he committed at least three prior DWI offenses. Thus, the state would need to prove an additional element not required for a criminal-vehicular-homicide conviction. The felony-murder charge will not "swallow up" the more specific charge. *Craven*, 628 N.W.2d at 637. Therefore, felony DWI is not precluded

from use as a predicate offense by a more specific statute with the same elements.

We are not insensitive to the far-reaching effect of our holding. Allowing conduct previously treated as criminal vehicular homicide to instead be treated as second-degree unintentional murder increases the severity level of the charged offense from VIII to X, and significantly increases the presumptive executed sentence. Minn. Sent. Guidelines §§ 4, 5. But this is the result that a straightforward application of the law produces. Furthermore, it is not demonstrably unjust, considering that an individual involved in an alcohol-related vehicular homicide would not face a charge of felony murder unless he or she had (1) at least three qualifying impaired-driving incidents or (2) a prior felony DWI. Minn.Stat. § 169A.24. As a court, it is not our role to alter or establish policy affecting public safety. That duty falls to the legislature. *State v. Tatum*, 556 N.W.2d 541, 548 n. 7 (Minn.1996) (inviting legislature to reconsider effects of statute).

## DECISION

Based on the language of Minn.Stat. § 609.19 and the history of the statute, first-degree DWI is a permissible predicate felony in a prosecution for second-degree felony murder.

**Certified question answered in the affirmative.**